July 18, 1979

## 79-53    MEMORANDUM OPINION FOR THE SECRETARY OF LABOR

### Immigration and Nationality Act—8 U.S.C. § 1101(a)(15)(H)—Nonimmigrant Aliens—Soccer Strike

This is in response to your request to the Attorney General for reconsideration of this Office's April 18 memorandum dealing with the status of nonimmigrant alien soccer players during a strike affecting the soccer league in which they play. That memorandum considered whether the players, temporarily employed in the United States by the North American Soccer league on so-called "H visas," 8 U.S.C. § 1101(a)(15)(H), could lawfully continue to work during the strike, and whether those who chose to honor the strike might lawfully remain in the United States. It concluded that the Immigration and Nationality Act (INA) and applicable regulations of the Immigration and Naturalization Service (INS) neither required deportation of those who chose not to work during the strike nor barred players from continuing to work if they chose to do so.

You take issue with this conclusion, pointing out that it has been "long-standing immigration policy" to bar the use of temporary alien labor whenever a labor dispute involving a work stoppage is in progress. You state that under INS regulations no nonimmigrant workers may be admitted into the United States during the pendency of a strike at their place of prospective employment; and that nonimmigrants already in employment at the beginning of the strike are required to discontinue work. You believe that the interpretation of these regulations in our memorandum will have "deleterious consequences outside the instant soccer dispute in that employers will be encouraged to stockpile docile alien labor" as insurance against a strike by their domestic workers. In addition, you note the possible collateral foreign policy consequences if injury or other harm to alien strikebreakers should occur.

At the Attorney General's request, we have undertaken additional research into the legal issues presented. We have reviewed a number of

documents (including those discussed in your request) that were not available to us at the time our original memorandum was prepared and are helpful in understanding the position that INS has taken over the years. On the basis of the materials that we now have, we are inclined to agree that INS has indeed interpreted its regulations in the way you suggest, that is, INS has interpreted them to mean that nonimmigrant aliens temporarily employed in this country must leave their employment in the event of a strike.

The INS regulation appears in Part 214 of title 8 of the Code of Federal Regulations ("Nonimmigrant Classes") at § 214.2(h)(10); it reads as follows:

> A petition [for admission] shall be denied if a strike or other labor dispute involving a work stoppage or layoff of employees is in progress in the occupation and at the place the beneficiary is to be employed or trained; if the petition has already been approved, the approval of the beneficiary's employment or training is automatically suspended while such strike or other labor dispute is in progress.

There are similar prohibitions in the regulations against employment of nonimmigration students during a strike, § 214.2(f)(6), and of nonimmigrant intra-company transferees § 124.2(1)(3a). In addition, the regulations provide that resident alien commuters, so-called "green-card" commuters, will not be permitted to reenter the United States to work at a place where a labor dispute involving a work stoppage is in progress. § 211.5(d).[1]

The regulation applicable to nonimmigrant aliens on H visas was promulgated in 1965. According to a memorandum prepared by an INS staff member at the time, it was designed to bring the regulations governing temporary workers into accord with those applicable to students. The restriction on student employment, promulgated a few months earlier, provided that permission for a student to work would be "automatically suspended during the period when a strike or other labor dispute involving a work stoppage or layoff of regular employees occurs at his place of employment." The memorandum states:

> It is believed that the Regulations relating to H nonimmigrants should contain a similar provision so that it is clear that the *Service does not authorize the use of H workers in situations involving strikes or labor disputes.* [Emphasis added.]

As you correctly point out, § 214.2(h)(10) has not been limited by INS to a prohibition on an alien's continuing to work during a labor dispute, but has also been broadly construed by that agency to prohibit an alien's participating in a strike.

---

[1] This regulation was struck down by the Court of Appeals for the Ninth Circuit in *Sam Andrews' Sons* v. *Mitchell,* 457 F. (2d) 745 (1972), as an abuse of the Attorney General's discretion under the Immigration and Nationality Act (INA).

In light of this history of administrative construction of the regulation,[2] we have reassessed our conclusions, focusing now not on the meaning of the regulation but rather on its validity as so construed. After careful consideration, we continue to have serious doubt whether § 124.2(h)(10) would be upheld if applied to require that nonimmigrant alien employees cease working in a situation like the soccer strike. This is so for two related reasons, both of which were touched on in our memorandum. First, the broad and unconditional requirement that an employee withhold his services during a work stoppage would appear to impinge on the individual's rights under § 7 of the National Labor Relations Act (NLRA), and, potentially, to upset the balance struck by Congress under that Act between labor and management, without serving any discernible purpose under the Immigration and Nationality Act. As you recognize, the two laws must be construed in a manner calculated to minimize conflict between them.

Second, while the Attorney General's authority under § 214(a) of the INA, 8 U.S.C. § 184(a) to impose conditions upon a nonimmigrant's visa is certainly very broad, at least in the absence of some more specific factual information about how this regulation relates to the purposes of the INA in a case like the soccer strike, we question whether his authority extends this far. As we noted in our memorandum, the conditions imposed must have some reasonable relationship to ends that are permissible under the INA, particularly in cases where those conditions are inconsistent with other constitutional or statutory guarantees. *Cf., Kleindienst* v. *Mandel*, 408 U.S. 753, 769 (1972) (violation of visa terms on previous visit sufficient grounds for exclusion of applicant for admission under § 212(a)(28) and (d)(3)). We have been pointed to no specific instance of employer "stockpiling" or other abuse of the temporary worker system that enforcement of this regulation could resolve.

That the present regulation can be enforced only through the institution of deportation proceedings adds to our concern. The purpose for which an H worker is admitted is to fill a gap in the domestic labor market for the benefit of the employer. A rule that triggers deportation without some finding that the conditions of entry no longer exist or that there are some statutory grounds for deportation seems to us likely to be held unreasonable in many situations. We think it would present particularly troublesome issues if invoked to deport an individual solely because he engaged in concerted activity against his employer.

The theory underlying the present regulation, as we understand it, was to preserve as neutral a role as possible between INS and the temporary alien worker in a labor dispute. Recognizing that the goal of neutrality

---

[2] Section 214.2(h)(10) has been actually enforced on only one occasion since its promulgation—in connection with the 1976 baseball strike. It is our understanding, however, that none of the nonimmigrants involved in that situation had actually entered the United States at the time of the strike. There is thus no precedent for the regulation's application to individuals actually at work in this country at the time a labor dispute arises.

is an appropriate one for INS, and at the same time that there may be many situations in which it would be equally appropriate under the INA to limit alien involvement in domestic labor disputes, we have undertaken to assist INS in drafting a regulation that would be more precisely tailored to the purposes of the INA and less likely to precipitate conflicts with the NLRA.

You have closed by offering the assistance of your Solicitor's Office in reconsidering this Department's interpretation of the regulation. At a meeting called to discuss this matter last week, we were informed by your Solicitor's Office that while the Department of Labor was interested in being informed of any proposed changes in the INS regulations, it was not interested in participating in their development. We would indeed appreciate whatever assistance those knowledgeable in your Department have to offer, and we would particularly find it valuable to have its active involvement in considering the preparation of a new regulation.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*
